## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

AMCO INSURANCE COMPANY, Inc. an )
Iowa Corporation and DEPOSITORS )
INSURANCE COMPANY, Inc., an Iowa )
Corporation, )
       )
       Plaintiffs, )     Case No. 24 cv 3313
       )
       v. )
       )
MISSOURI FIESTA, INC., a Missouri )
Corporation and W&M RESTAURANTS, )
INC., Missouri Corporati0on and MATTHEW )
R. HERMAN, )
       )
       Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, AMCO INSURANCE COMPANY, Inc. an Iowa Corporation, and DEPOSITORS INSURANCE COMPANY, Inc., an Iowa Corporation, by and through their attorneys, MEAGHER & GEER, P.L.L.P., state the following as their Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, against Defendants, MISSOURI FIESTA, INC., a Missouri Corporation and  W&M RESTAURANTS, INC., a Missouri Corporation and MATTHEW R. HERMAN:

### Introduction

1.     This is a Declaratory Judgment action to obtain a declaration of the rights and obligations under CGL and Umbrella insurance policies issued by AMCO INSURANCE COMPANY, an Iowa Corporation and DEPOSITORS INSURANCE COMPANY, an Iowa Corporation ("AMCO" or "DEPOSITORS" or collectively "Insurers" or "Nationwide") to their insureds, MISSOURI FIESTA, INC., a Missouri Corporation and W&M RESTAURANTS, INC.,

a Missouri Corporation ("Missouri" or "W&M" or collectively "Defendants" or "Insureds). Plaintiff seek a declaration from this Court regarding the extent of the Plaintiffs' rights and obligations, if any, under their policies for the allegations in the lawsuit entitled, *Mathew R. Herman, individually and on behalf of himself and all others similarly situated v. Missouri Fiesta, Inc. and W&M Restaurants, Inc., 2024 CH 000020.*, filed in the Chancery Division of the Circuit Court of the Seventh Judicial Circuit, Sangamon County, State of Illinois ("Underlying Complaint" or "Underlying Lawsuit"). (A copy of the Underlying Complaint is attached as Exhibit A.)

2.      Plaintiffs seek a declaration from this Court that they owe no obligation under their policies to defend and/or to indemnify Missouri and W&M with regard to the allegations in the Complaint.

## Jurisdiction and Venue

3.      Plaintiff, AMCO Insurance Company ("AMCO") is an insurance company with its principal place of business in Des Moines, Iowa and was authorized to issue policies of insurance in the State of Illinois.

4.      Plaintiff, Depositors Insurance Company ("Depositors") is an insurance company with its principal place of business in Des Moines, Iowa and was authorized to issue policies of insurance in the State of Illinois.

5.      Defendant, Missouri Fiesta, Inc., is a Missouri Corporation with its principal place of business located at 405 W. Hwy 50, Suite 500, Union, Missouri 63084. The underlying

lawsuit alleges that insureds owned and operated approximately 14 taco bell restaurants throughout the state of Illinois.[1]

6.        Defendant W&M Restaurants, Inc. is a Missouri Corporation with its principal place of business located at 405 W. Hwy 50, Suite 500, Union, Missouri 63084.  The underlying lawsuit alleges that insureds owned and operated approximately 14 taco bell restaurants throughout the state of Illinois.[2]

7.        Defendant, Matthew Herman, ("Herman") is a citizen of Illinois.  Plaintiffs name Herman as a potentially interested party by virtue of his status as the named plaintiff and putative class representative in the Underlying Complaint.  No affirmative relief is sought against Herman.  (*See* Exhibit A.)

8.        The underlying lawsuit alleges that insureds owned and operated approximately 14 taco bell restaurants throughout the state of Illinois.[3]  The alleged violations arose from the implementation of the insureds' timekeeping system that collected and stored the digital fingerprint scans of the insureds' workers without providing the statutorily required written consent.[4]  The digital fingerprint scans were used to authenticate the identity of the purported class members when they clocked in/out.[5]

---

[1] See Exhibit A,  Class Action Complaint (hereinafter 'Underlying Suit' or 'Underlying Complaint') at par 10.

[2] Exhibit A at par 10.

[3] Exhibit A at par 10.

[4] Exhibit A at pars. 27 -29.

[5] Exhibit A at pars 25-26.

9.      Herman alleges in the Underlying Complaint that the violations of BIPA occurred during his employment at defendant's taco bell located at 1400 South State Street in Jerseyville, Illinois.[6]

10.     Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between the Plaintiffs, AMCO and Depositors, on the one hand, and Defendants, Missouri, W&M, and Herman on the other hand; and (b) the amount in controversy, including the potential cost of defending and indemnifying Missouri and W&M in the Underlying Complaint well exceeds $75,000.

11.     Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this lawsuit occurred in this District, including where the statutory violations alleged in the Underlying Complaint occurred and where the underlying lawsuit is pending.

12.     An actual justiciable controversy exists between AMCO and Depositors, on the one hand, and Missouri and W&M, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## The Underlying Putative Class Action Lawsuit

13.     On March 21, 2024, Matthew R. Herman, individually and a purported class of similarly situated persons filed a class action complaint ("underlying complaint" or "underlying lawsuit") directed against Missouri Fiesta, Inc. and W&M Restaurants, Inc. alleging violations of the Illinois Biometric Information Privacy Act (BIPA).  The underlying complaint was filed in the

---

[6] Exhibit A at par. 31.

4

Chancery Division of the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, and is titled *Mathew R. Herman, individually and on behalf of himself and all others similarly situated v. Missouri Fiesta, Inc. and W&M Restaurants, Inc., 2024 CH 000020.* (The "Underlying Complaint"). (*See* Exhibit A, Class Action Complaint.)

14.    The Underlying Complaint contains one count directed against Missouri and W&M. All of the allegations in the underlying complaint allege that both of said defendants violated the Illinois Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.]

15.    In particular, the Underlying Complaint alleges that Missouri and W&M 'use a point of sale or POS system that required employees to use their fingerprints a means of authentication and to enable them to use the cash register or the computer monitors at the counter, and to keep employee times to clock in and out and record breaks."[7]  The complaint further alleges that "Defendants failed to inform their employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all, and failed to obtain their knowing consent to use their biometric data"[8]

16.    The Underlying Complaint alleges that Missouri and W&M "failed to inform their employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all, and failed to obtain their knowing consent to use their biometric data"[9]

17.    The Underlying Complaint alleges that Missouri and W&M "failed to obtain written releases from Plaintiff and the Class before they collected, used, and stored their biometric identifiers and biometric information."[10]

---

[7] Exhibit A at  par. 26.

[8] Exhibit A at par. 27.

[9] Exhibit A at par. 27.

[10] Exhibit A at par. 50.

18.     The Underlying Complaint alleges that named plaintiff, Matthew Herman was employed at a taco bell located at 1400 South State Street in Jerseyville, Illinois.[11]

19.     The Underlying Complaint further alleges that plaintiff, Matthew Herman, worked at said taco bell "for various portions of 2020 through 2022."[12]

20.     The Underlying Complaint seeks to certify a purported class of "all citizens of the State of Illinois who, within the applicable statute of limitations, had their biometric information collected, captured, received otherwise obtained, or disclosed by Defendants, or any one of them, while they resided in Illinois."[13]

21.     The Underlying Complaint seeks statutory damages available under BIPA to Herman, as well as for each putative class member, including $1,000 to $5,000 for each of Defendants' Violation of BIPA."[14]

## THE POLICIES INSURING MISSOURI FIESTA

22.     AMCO and Depositors issued to Missouri both CGL and Umbrella Policies for the years July 21, 2018 to July 21, 2023.  Said policies were cancelled effective July 21, 2023.[15] (Copies of said Policies are attached hereto and made a part hereof as Exhibits B1-B9).

### The Primary CGL Policies

---

[11] Exhibit A at par. 31.

[12] Exhibit A at par. 31.

[13] Exhibit A at par. 37.

[14] Exhibit A at prayer for relief, page 13.

[15] **EXHIBIT B1:** ACP CAA 3037281342 (UMB) 7-21-18 TO 7-21-19 (AMCO); **EXHIBIT B2**: ACP BPFD 3047281342 (CGL) 7-21-19 TO 7-21-20 (DEPOSITORS); **EXHIBIT B3:** ACP CAA 3047281342 (UMB) 7-21-19 TO 7-21-20 (AMCO); **EXHIBIT B4:** ACP BPFD 3057281342 (CGL) 7-21-20 TO 7-21-21 (DEPOSITORS); **EXHIBIT B5:** ACP CAA 3057281342 (UMB) 7-21-20 TO 7-21-21 (AMCO); **EXHIBIT B6:** ACP BPFD 3067281342 (CGL) 7-21-21 TO 7-21-22 (DEPOSITORS); **EXHIBIT B7:** ACP CAA 3067281342 (UMB) 7-21-21 TO 7-21-22 (AMCO); **EXHIBIT B8:** ACP BPFD 3077281342 (CGL) 7-21-22 TO 7-21-23 (DEPOSITORS); **EXHIBIT B9**:  ACP CAA 3077281342 (UMB) 7-21-22 TO 7-21-23 (AMCO).

23.     Beginning with the primary CGL Policies, said policies contain the following policy

provisions:[16]

I.   **COVERAGES**

A.  **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **INSURING AGREEMENT**

a.  We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

***

3.  **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

17.  **"Property damage"** means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

***

---

[16] See Exhibit B2; Exhibit B4; Exhibit B6; and Exhibit B8.

B. **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

   1. **INSURING AGREEMENT**

      a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

      \*\*\*

   2. **EXCLUSIONS**

      This insurance, including any duty we have to defend "suits", does not apply to personal and advertising injury:

      …

   p. **Recording and Distribution Of Material In Violation Of Law**

      Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

      (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

      (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

      (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

\*\*\*

## s. **Employment Practices**

To:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION**

. . .

B.  In Section 1. COVERAGES, COVERAGE B –
PERSONAL AND ADVERTISING INJURY
LIABILITY under Paragraph 2. EXCLUSIONS, the
following exclusion is added:

This insurance, including any duty we have to
defend "suits", does not apply to:

**Access Or Disclosure Of Confidential Or
Personal Information And Data-related
Liability**

"Personal and advertising injury" arising out of
any access to or disclosure of any person's or
organization's confidential or personal
information, including patents, trade secrets,
processing methods, customer lists, financial
information, credit card information, health
information or any other type of nonpublic
information.

**The Umbrella Policies**

24.    Turning next to the Umbrella Policies insuring Missouri, said policies contain the

following provisions:[17]

---

[17] See Exhibit B1; Exhibit B3; Exhibit B5; Exhibit B7; and Exhibit B9.

**A. Coverage A - Excess Follow Form Liability Insurance**

1.  Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:

    a.  any contrary provision contained in this policy; or

    b.  any provision in this policy for which a similar provision is not contained in "underlying insurance".

2.  With respect to the exceptions stated above, the provisions of this policy will apply.

3.  The amount we will pay for damages is limited as described in Limits of Insurance.

4.  Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".

5.  We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

…

**B. Coverage B - Umbrella Liability Insurance**

1.  Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance", whichever is greater.

\*\*\*

11

---
**EXCLUSIONS**

---

A. **Applicable to Coverage A and Coverage B**

Under Coverage A and Coverage B, this insurance does not apply to:

…

8. Employment-related Practices

"Injury or damage", "bodily injury" or "personal and advertising injury" to:

a. A person arising out of any:

1) Refusal to employ that person;

2) Termination of that person's employment; or

3) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

…

.
C. **Applicable** to **Coverage B Only**

Under Coverage B, this insurance does not apply to:

…

13. Recording And Distribution Of Material Or Information In Violation Of Law

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

12

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**c.** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

*** 

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

**A.** Under **Exclusions**, **A. Applicable to Coverage A and Coverage B**, Exclusion **11.** Electronic Data is replaced by the following:

This insurance does not apply to:

**11.** Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

Damages and "personal and advertising injury" arising out of:

**a.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

## THE POLICIES INSURING W&M RESTAURANTS

25.     Depositors and AMCO issued to W&M CGL and Umbrella Policies for the years April 1, 2019 to April 1, 2025.[18]   (Copies of said policies are attached hereto and made a part hereof as Exhibit C1-C8).

### The Primary CGL Policies

26.     Beginning with the primary CGL Policies insuring W&M, said policies contain the following provisions:[19]

> I.   **COVERAGES**
>
> A.   **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
>  1.   **INSURING AGREEMENT**
>
>   a.   We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.
>
> \*\*\*
>
>  3.   **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> \*\*\*

---

[18] **EXHIBIT C1 (Combined CGL and Umbrella)**: BPFD 7173959909 (CGL) (4-1-19 to 4-1-20) (DEPOSITORS); ACP CAA 7173959909 (UMB) (4-1-19 to 4-1-20) (AMCO); **EXHIBIT C2:** ACP BPFD 7183959909 (CGL) (4-1-20 to 4-1-21) (DEPOSITORS); **EXHIBIT C3:** ACP CAA 7183959909 (UMB)(4-1-20 to 4-1-21) (AMCO); **EXHIBIT C4:** ACP BPFD 7193959909 (CGL) 4-1-21 TO 4-1-22 (DEPOSITORS); **EXHIBIT C5:** ACP BPFC 7103959909 (CGL) 4-1-22 TO 4-1-23 (AMCO); **EXHIBIT C6**: ACP CAA  7103959909(UMB) 4-1-22 TO 4-1-23 (AMCO); **EXHIBIT C7:**  ACP BPFD 7113959909 (CGL) 4-1-23 to 4-1-24 (DEPOSITORS);  **EXHIBIT C8:**  ACP CAA 7113959909 (UMB) 4-1-23 TO 4-1-24 (AMCO); **EXHIBIT C9 (Combined CGL and Umbrella)**:  ACP GLAO 7123959909 (CGL) 4-1-24 TO 4-1-25 (AMCO); ACP CAA 7123959909 (UMB) 4-1-24 TO 4-1-25 (AMCO)

[19] See Exhibit C1; Exhibit C2; Exhibit C4; Exhibit C5; Exhibit C7; and Exhibit C9.

17. **"Property damage"** means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   \*\*\*

B. **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

   1. **INSURING AGREEMENT**

      a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

   \*\*\*

   2. **EXCLUSIONS**

      This insurance, including any duty we have to defend "suits", does not apply to personal and advertising injury:

      …

      p. **Recording and Distribution Of Material In Violation Of Law**

         Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

         (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

         (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

         (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

…

s. **Employment Practices**

To:

(1) A person arising out of any:

  (a) Refusal to employ that person;

  (b) Termination of that person's employment; or

  (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION**

…

B. In Section 1. COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY under Paragraph 2. EXCLUSIONS, the following exclusion is added:

This insurance, including any duty we have to defend "suits", does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

16

***

EFFECTIVE DATE: 12:01 AM Standard Time,                         **BUSINESSOWNERS**
(at your principal place of business)                        **PB 04 12 (01-01)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITATION OF COVERAGE TO DESIGNATED PREMISES

This endorsement modifies insurance provided under the following:

     PREMIER BUSINESSOWNERS LIABILITY COVERAGE FORM

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of the ownership, maintenance or use of those premises that are shown in the Declarations, and your operations necessary or incidental to those premises.

**All terms and conditions of this policy apply unless modified by this endorsement.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1985

27.      Further, Depositors Policy ACP GLAO 7123959909 (CGL) 4-1-24 TO 4-1-25

(AMCO) contains the following policy provision:

**COMMERCIAL GENERAL LIABILITY**
**CG 00 69 12 23**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – VIOLATION OF LAW ADDRESSING DATA PRIVACY

…

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Violation Of Law Addressing Data Privacy**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** Any federal, state or local statute, ordinance, regulation or other law that addresses, prohibits, or limits access to, use of or the printing, dissemination, disposal, obtaining, collecting, storing, safeguarding, recording, retention, sending, transmitting, communicating, selling or distribution of any person's or organization's confidential or personal material or information, including financial, health, biometric or other nonpublic material or information.

Any such federal, state or local statute, ordinance, regulation or other law includes but is not limited to:

**(1)** The Illinois Biometric Information Privacy Act (BIPA), including any amendment of or addition to such law; or

**(2)** The California Consumer Privacy Act (CCPA), including any amendment of or addition to such law; or

(Emphasis added)

**The Umbrella Policies**

28.     Turning next to the Umbrella Policies insuring W&M, said policies contain the following provisions:[20]

---

[20] See Exhibit C1; Exhibit C3; Exhibit C6; Exhibit C8; and Exhibit C9.

**A. Coverage A - Excess Follow Form Liability Insurance**

1. Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:

   a. any contrary provision contained in this policy; or

   b. any provision in this policy for which a similar provision is not contained in "underlying insurance".

2. With respect to the exceptions stated above, the provisions of this policy will apply.

3. The amount we will pay for damages is limited as described in Limits of Insurance.

4. Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".

5. We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

**B. Coverage B - Umbrella Liability Insurance**

1. Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance", whichever is greater.

\*\*\*

---
**EXCLUSIONS**

---

A.  **Applicable to Coverage A and Coverage B**

Under Coverage A and Coverage B, this insurance does not apply to:

…

8.  Employment-related Practices

"Injury or damage", "bodily injury" or "personal and advertising injury" to:

a.  A person arising out of any:

1)  Refusal to employ that person;

2)  Termination of that person's employment; or

3)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

…

.

C.  **Applicable** to **Coverage B Only**

Under Coverage B, this insurance does not apply to:

…

13.  Recording And Distribution Of Material Or Information In Violation Of Law

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a.  The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**c.** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**d.** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

\*\*\*

## EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

**A.** Under **Exclusions, A. Applicable to Coverage A and Coverage B**, Exclusion **11.** Electronic Data is replaced by the following:

This insurance does not apply to:

**11.** Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability

Damages and "personal and advertising injury" arising out of:

**a.** Any access to *or disclosure of* any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

29.    On or about April 4, 2024, Missouri and W&M tendered to AMCO and Depositors the defense and indemnity of Missouri and W&M in relation to the Underlying Complaint.

30.    On May 7, 2024 and again on September 24, 2024, AMCO and Depositors advised Missouri and W&M, by written correspondence, that there was no coverage for Missouri or W&M under the AMCO or Depositors policies.

## COUNT I – DECLARATORY JUDGMENT – MISSOURI FIESTA (PRIMARY CGL POLICIES)

31.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 30 as though fully set forth herein as paragraph 31.

32.     Coverage A of the CGL Policies provide coverage for "Bodily Injury and Property Damage Liability."

33.     Coverage A of the CGL Policies define "bodily injury" as "bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time."[21] The Underlying Complaint only alleges violations of a privacy statute, and contains no allegations related bodily injury, sickness or death.  Therefore, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage A of the primary CGL Policies.

34.     Similarly, Coverage A of the CGL Policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."[22]  The Underlying Complaint only alleges violations of a privacy statute, and contains no allegations related property damage.  Therefore, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage A of the CGL Policies.

35.     Coverage B of the CGL Policies provide coverage for 'Personal and Advertising Injury (PAI).

36.     However, Coverage B is precluded by the exclusion titled "Recording and Distribution of Material in Violation of Law" ("Violations of Law Exclusion"), which excludes coverage for any bodily injury, property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the printing,

---

[21] See Exhibit B2; Exhibit B4; Exhibit B6; and Exhibit B8.

[22] Id.

dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information."[23] (See Exhibit B). This Exclusion precludes PAI coverage for the Underlying Complaint, because the Underlying Complaint arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.], which is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." Therefore, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage B of the Primary CGL Policies.

37.    Additionally, and in the alternative, Coverage B is also precluded by the exclusion titled the 'Employment-Related Practices Exclusion' which precludes coverage for personal and advertising injury causing harm to an employee arising from "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." This exclusion precludes coverage for the Underlying Complaint which alleges that Missouri violated BIPA by instituting an employment-related practice and policy that "…use[d] a point of sale or POS system that required employees to use their fingerprints a means of authentication and to enable them to use the cash register or the computer monitors at the counter, and to keep employee times to clock in and out and record breaks."[24]

38.    Because the Underlying Complaint alleges that this employment-related practice and policy can cause harm to an employee, it is encompassed within the Exclusion. Accordingly, the insurers owe no duty to provide coverage for the Underlying Complaint under Coverage B of the CGL Policies since coverage is barred by the 'Employment-Related Practices Exclusion.'

---

[23] Id.

[24] See Underlying Complaint at par. 26.

39.     Additionally, and in the alternative, Coverage B is also precluded by the exclusion titled the 'Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability." ("Access Or Disclosure Exclusion")   This exclusion precludes coverage for "Personal and advertising injury' arising out of any access to or disclosure of any person's…confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."[25]   As discussed above, the Underlying Complaint alleges that Missouri violated BIPA when it obtained and accessed its employees private biometric information and disclosed that information to a third party.  Accordingly, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage B of the CGL Policies since coverage is barred by the 'Access Or Disclosure Exclusion."

40.     Additionally, and in the alternative, coverage under the CGL Policies is also precluded to the extent that any individual plaintiff or member of the putative class' causes of action did not accrue during the pendency of the any of the CGL Policies. Here, the CGL policies insuring Missouri were in effect for the years July 21, 2018 to July 21, 2023.   To date, the putative class has not yet been certified and may never be certified.  Accordingly, the insurers owe no duty to provide coverage to Missouri for any alleged BIPA violations that occurred prior to July 21, 2018 or otherwise outside of the effective dates of the CGL Policies.

41.     Nationwide specifically denies any and all liability under the terms and provisions of the aforementioned policies of insurance, and each of its renewals, issued to Missouri, and insists that it is not obligated to defend or indemnify any judgment entered against Missouri in the Underlying Suit and, by reason of such demand, Nationwide is in

---

[25] Id.

peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

42.    An actual controversy exists between the insurers and Missouri, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiffs, AMCO INSURANCE COMPANY, Inc. an Iowa Corporation and DEPOSITORS INSURANCE COMPANY, Inc., an Iowa Corporation, respectfully prays that this Honorable Court:

A.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the CGL Policies;

B.    Declare that AMCO and Depositors owe no duty to defend or indemnify MISSOURI FIESTA, INC., a Missouri Corporation under the aforementioned CGL policies in connection with the underlying class action complaint filed in the Chancery Division of the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, and is titled *Mathew R. Herman, individually and on behalf of himself and all others similarly situated v. Missouri Fiesta, Inc. and W&M Restaurants, Inc., 2024 CH 000020*; and

C.    And any and all other relief that this Court deems just and equitable under the facts and circumstances.

## COUNT II – DECLARATORY JUDGMENT – W&M RESTAURANTS (PRIMARY CGL POLICIES)

43.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 30 as though fully set forth herein as paragraph 43.

44.    Coverage A of the Primary CGL Policies insuring W&M provide coverage for "Bodily Injury and Property Damage Liability." [26]

---

[26] See Exhibit C1; Exhibit C2; Exhibit C4; Exhibit C5; Exhibit C7; and Exhibit C9.

45.     Coverage A of said Policies define "bodily injury" as "bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any time."[27] The Underlying Complaint only alleges violations of a privacy statute, and contains no allegations related bodily injury, sickness or death.  Therefore, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage A of the Primary CGL Policies.

46.     Similarly, Coverage A of the Primary Policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."[28]   The Underlying Complaint only alleges violations of a privacy statute, and contains no allegations related property damage.  Therefore, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage A of the Primary Policies.

47.     Coverage B of the Primary Policies provide for coverage for 'Personal and Advertising Injury (PAI).

48.     However, Coverage B is precluded by the exclusion titled "Recording and Distribution of Material in Violation of Law" ("Violations of Law Exclusion"), which excludes coverage for any bodily injury, property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information." [29] This Exclusion precludes PAI coverage for the Underlying Complaint, because the Underlying Complaint arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq.*], which is an Illinois state

---

[27] Id.

[28] Id.

[29] Id.

statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." Therefore, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage B of the Primary Policies.

49.    Additionally, and in the alternative, Coverage B is also precluded by the exclusion titled the 'Employment-Related Practices Exclusion' which precludes coverage for personal and advertising injury causing harm to an employee arising from "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person."[30] This exclusion precludes coverage for the Underlying Complaint which alleges that W&M violated BIPA by instituting an employment-related practice and policy that "…use[d] a point of sale or POS system that required employees to use their fingerprints a means of authentication and to enable them to use the cash register or the computer monitors at the counter, and to keep employee times to clock in and out and record breaks."[31]

50.    Because the Underlying Complaint alleges that this employment-related practice and policy can cause harm to an employee, it is encompassed within the Exclusion.  Accordingly, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage B of the Primary policies since coverage is barred by the 'Employment-Related Practices  Exclusion.'

51.    Additionally, and in the alternative, Coverage B is also precluded by the exclusion titled the 'Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability." ("Access Or Disclosure Exclusion")   This exclusion precludes coverage for "Personal and Advertising Injury' arising out of any access to or disclosure of any person's…confidential or

---

[30] Id.

[31] See Underlying Complaint at par. 26.

personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."[32]   As discussed above, the Underlying Complaint alleges that W&M violated BIPA when it obtained and accessed its employees private biometric information and disclosed that information to a third party.  Accordingly, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage B of the Primary Policies since coverage is barred by the 'Access Or Disclosure Exclusion.'

52.    Additionally, and in the alternative, the Primary Policies contain a provision entitled "Limitation of Coverage to Designated Premises." This exclusion states in pertinent part:  "This insurance applies only to 'bodily injury', 'property damage', 'personal and advertising injury' …arising out of the ownership, maintenance or use of those premises that are shown in the Declarations and your operations necessary or incidental to those premises."

53.    Here the Underlying Complaint alleges that named plaintiff, Matthew Herman was employed at a taco bell located at 1400 South State Street in Jerseyville, Illinois.[33]  However, the Underlying Complaint does not allege the locations or addresses of any of the other restaurants at which any member of the putative class may have worked.  Moreover, the class has not been certified and may never be certified.

54.    Accordingly, coverage is precluded under any of the Primary Policies to the extent that the cause of action of any individual plaintiff or any member of the putative class did not occur at a 'Designated Premises' as set forth in the applicable Primary Policies.

---

[32] Id.

[33] See Underlying Complaint at Par. 31.

55.      Additionally, and in the alternative, Depositors Policy ACP GLAO 7123959909 (CGL) 4-1-24 TO 4-1-25 contains an exclusion entitled: "Exclusion – Violation of Law Addressing Data Privacy."  This exclusion bars, in pertinent part, coverage for: "'Personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate:… any federal, state or local stature…that addresses, prohibits, or limits access to, use of or the printing, dissemination, disposal, obtaining collecting, storing, safeguarding, recording, retention, sending, transmitting, communicating, selling or distribution of any person's…confidential personal material or information,, including financial, health, biometric or other nonpublic material or information.  Any such federal, state or local statute…includes but is not limited to:…*the Illinois Biometric Information Privacy Act (BIPA)*, including any amendment of or addition to such law…" (Emphasis added).  This Exclusion precludes PAI coverage for the Underlying Complaint, because the Underlying Complaint arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq*.].  Further, BIPA is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." Therefore, Depositors owes no duty to provide coverage for the Underlying Complaint under Coverage B of Depositors Policy ACP GLAO 7123959909.

56.      Additionally, and in the alternative, coverage under all of the primary CGL Policies is also precluded to the extent that any individual plaintiff or member of the putative class' causes of action did not accrue during the pendency of said Policies. Here, the Primary CGL policies insuring W&M were in effect for the years April 1, 2019 to April 1, 2025.   To date, the putative class has not yet been certified and may never be certified.  Accordingly, said

insurers owe no duty to provide coverage to W&M for any alleged BIPA violations that occurred prior to April 1, 2019 or otherwise outside of the effective dates of the Primary Policies.

57.     AMCO and Depositors specifically deny any and all liability under the terms and provisions of the aforementioned policies of insurance, and each of its renewals, issued to W&M, and insists that they are not obligated to defend or indemnify any judgment entered against W&M in the Underlying Suit and, by reason of such demand, said insurers are in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

58.     An actual controversy exists between said insurers and W&M, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiffs, AMCO INSURANCE COMPANY, Inc. an Iowa Corporation and DEPOSITORS INSURANCE COMPANY, Inc., an Iowa Corporation, respectfully pray that this Honorable Court:

A.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the primary CGL Policies;

B.     Declare that neither AMCO or Depositors owe no duty to defend or indemnify W&M RESTAURANTS, INC. under the aforementioned Depositors policies in connection with the underlying class action complaint filed in the Chancery Division of the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, and is titled *Mathew R. Herman, individually and on behalf of himself and all others similarly situated v. Missouri Fiesta, Inc. and W&M Restaurants, Inc., 2024 CH 000020*; and

C.     Any and all other relief that this Court deems just and equitable under the facts and circumstances.

## COUNT III – DECLARATORY JUDGMENT – MISSOURI FIESTA (UMBRELLA POLICIES)

59.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 30 as though fully set forth herein as paragraph 59.

60.     Coverage A of the Umbrella Policies states in pertinent part:  "Under Coverage A, we will pay on behalf of the 'insured' that part of "loss" covered by this insurance in excess of the total applicable limits of 'underlying insurance….' 4.  Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit…, then we will not cover such "loss."[34]

61.     Coverage B of the Umbrella Policies states in pertinent part:  "Under Coverage B, we will pay on behalf of the 'insured' damages the 'insured' becomes legally obligated to pay by reason of liability imposed by law because of 'bodily injury', 'property damage, or 'personal and advertising injury…'" [35]

62.     First, there is no coverage under Coverage A of the Umbrella Policies because there is no coverage under any of the underlying primary CGL policies.

63.     As set forth in Count I, there is no coverage under Coverage A of the primary CGL policies for Missouri because the underlying class action lawsuit does not seek damages for 'bodily injury' or 'property damage.'

64.     Additionally and in the alternative, there is no coverage under Coverage A or Coverage B of the Umbrella policies because said coverage is barred by the  "Employment Practices Exclusion,"  which precludes coverage for personal and advertising injury causing harm to an employee arising from "employment-related practices, policies, acts or omissions, such as coercion,

---

[34] See Exhibit B1; Exhibit B3; Exhibit B5; Exhibit B7; and Exhibit B9.

[35] Id.

demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person."[36] This exclusion precludes coverage for the Underlying Complaint which alleges that Missouri violated BIPA by instituting an employment-related practice and policy that "…use[d] a point of sale or POS system that required employees to use their fingerprints a means of authentication and to enable them to use the cash register or the computer monitors at the counter, and to keep employee times to clock in and out and record breaks."[37]

65.    Because the Underlying Complaint alleges that this employment-related practice and policy can cause harm to an employee, it is encompassed within the Exclusion.  Accordingly, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage A or Coverage B of the Umbrella Policies since coverage is barred by the 'Employment-Related Practices Exclusion.'

66.    Additionally, and in the alternative, there is no coverage under Coverage A or Coverage B of the Umbrella Policies because coverage is also precluded by the exclusion titled the 'Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability." ("Access Or Disclosure Exclusion") This exclusion precludes coverage for "Personal and Advertising Injury' arising out of any access to or disclosure of any person's…confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."[38]    As discussed above, the Underlying Complaint alleges that Missouri violated

[36] Id.

[37] See Underlying Complaint at par. 26.

[38] See Exhibit B1; Exhibit B3; Exhibit B5; Exhibit B7; and Exhibit B9.

BIPA when it obtained and accessed its employees private biometric information and disclosed that information to a third party.  Accordingly, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage A or Coverage B of the Umbrella Policies since coverage is barred by the 'Access Or Disclosure Exclusion."

67.    Additionally and in the alternative, there is no coverage under Coverage B of the Umbrella Policies because is precluded by the exclusion titled "Recording and Distribution of Material Or Information in Violation of Law", which excludes coverage for any bodily injury, property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information." [39]  This Exclusion precludes bodily injury, property damage or personal and advertising injury coverage for the Underlying Complaint, because the Underlying Complaint arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq.*], which is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." Therefore, said insurers owe no duty to provide coverage to Missouri for the Underlying Complaint under Coverage B of the Umbrella Policies.

68.    The insurers specifically deny any and all liability under the terms and provisions of the aforementioned policies of insurance, and each of its renewals, issued to Missouri, and insists that it is not obligated to defend or indemnify any judgment entered against Missouri in the Underlying Suit and, by reason of such demand, said insurers  are in peril and

---

[39] Id.

in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

69.     An actual controversy exists between the insurers and Missouri, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, the plaintiffs, AMCO INSURANCE COMPANY, Inc. an Iowa Corporation and DEPOSITORS INSURANCE COMPANY, Inc., an Iowa Corporation, respectfully prays that this Honorable Court:

A.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Umbrella Policies;

B.     Declare that AMCO and Depositors owe no duty to defend or indemnify MISSOURI FIESTA, INC., a Missouri Corporation under the aforementioned Umbrella policies in connection with the underlying class action complaint filed in the Chancery Division of the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, and is titled *Matthew R. Herman, individually and on behalf of himself and all others similarly situated v. Missouri Fiesta, Inc. and W&M Restaurants, Inc., 2024 CH 000020*; and

C.     And any and all other relief that this Court deems just and equitable under the facts and circumstances.

### COUNT IV – DECLARATORY JUDGMENT – W&M (UMBRELLA POLICIES)

70.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 30 as though fully set forth herein as paragraph 70.

71.     Coverage A of the Umbrella Policies states in pertinent part:  "Under Coverage A, we will pay on behalf of the 'insured' that part of "loss" covered by this insurance in excess of the total applicable limits of 'underlying insurance….' 4.  Notwithstanding anything to the contrary

contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit…, then we will not cover such "loss."[40]

72.     Coverage B of the Umbrella Policies state in pertinent part:  Under Coverage B, we will pay on behalf of the 'insured' damages the 'insured' becomes legally obligated to pay by reason of liability imposed by law because of 'bodily injury', 'property damage, or 'personal and advertising injury…'" [41]

73.     First, there is no coverage under Coverage A of the Umbrella Policies because there is no coverage under any of the underlying primary CGL policies.

74.     As set forth in Count II, there is no coverage under Coverage A of the primary CGL policies for W&M because the underlying class action lawsuit does not seek damages for 'bodily injury' or 'property damage.'

75.     Additionally and in the alternative, there is no coverage under Coverage A or Coverage B of the Umbrella policies because said coverage is barred by the "Employment Practices Exclusion,"  which precludes coverage for personal and advertising injury causing harm to an employee arising from "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person." [42] This exclusion precludes coverage for the Underlying Complaint which alleges that Missouri violated BIPA by instituting an employment-related practice and policy that "…use[d] a point of sale or POS system that required employees to use their fingerprints a means of authentication and to enable them to use

---

[40] See Exhibit C1; Exhibit C3; Exhibit C6; Exhibit C8; and Exhibit C9.

[41] Id.

[42] Id.

the cash register or the computer monitors at the counter, and to keep employee times to clock in and out and record breaks."[43]

76.    Because the Underlying Complaint alleges that this employment-related practice and policy can cause harm to an employee, it is encompassed within the Exclusion. Accordingly, the insurers owe no duty to provide coverage for the Underlying Complaint under Coverage A or Coverage B of the Umbrella Policies since coverage is barred by the 'Employment-Related Practices Exclusion.'

77.    Additionally, and in the alternative, there is no coverage under Coverage A or Coverage B of the Umbrella Policies because coverage is also precluded by the exclusion titled the 'Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability." ("Access Or Disclosure Exclusion")  This exclusion precludes coverage for "Personal and advertising injury' arising out of any access to or disclosure of any person's…confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information."[44]  As discussed above, the Underlying Complaint alleges that W&M violated BIPA when it obtained and accessed its employees' private biometric information and disclosed that information to a third party.  Accordingly, said insurers owe no duty to provide coverage for the Underlying Complaint under Coverage A or Coverage B of the Umbrella Policies since coverage is barred by the 'Access Or Disclosure Exclusion."

78.    Additionally and in the alternative, there is no coverage under Coverage B of the Umbrella Policies because coverage precluded by the exclusion titled "Recording and Distribution

---

[43] See Underlying Complaint at par. 26.

[44] See Exhibit C1; Exhibit C3; Exhibit C6; Exhibit C8; and Exhibit C9.

of Material Or Information in Violation of Law", which excludes coverage for any bodily injury, property damage, or personal and advertising injury that arises from any act or omission in violation of any state statute that "addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information." [45] This Exclusion precludes bodily injury, property damage or personal and advertising injury coverage for the Underlying Complaint, because the Underlying Complaint arises directly from alleged violations of the Biometric Information Privacy Act ("BIPA") [740 ILCS 14/1 *et seq.*], which is an Illinois state statute that regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." Therefore, the insurers owe no duty to provide coverage to W&M for the Underlying Complaint under Coverage B of the Umbrella Policies.

79.     The insurers specifically deny any and all liability under the terms and provisions of the aforementioned policies of insurance, and each of its renewals, issued to W&M, and insists that it is not obligated to defend or indemnify any judgment entered against W&M in the Underlying Suit and, by reason of such demand, said insurers are in peril and in danger of loss unless the policies of insurance be properly construed and the rights of all parties hereto determined in this action.

80.     An actual controversy exists between said insurers and W&M, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

---

[45] Id.

WHEREFORE, the plaintiffs, AMCO INSURANCE COMPANY, Inc. an Iowa Corporation and DEPOSITORS INSURANCE COMPANY, Inc., an Iowa Corporation, respectfully prays that this Honorable Court:

A.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Umbrella Policies;

B.    Declare that AMCO and Depositors owe no duty to defend or indemnify W&M RESTAURANTS, INC., Missouri Corporation under the aforementioned Umbrella policies in connection with the underlying class action complaint filed in the Chancery Division of the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, and is titled *Matthew R. Herman, individually and on behalf of himself and all others similarly situated v. Missouri Fiesta, Inc. and W&M Restaurants, Inc., 2024 CH 000020*; and

C.    And any and all other relief that this Court deems just and equitable under the facts and circumstances.

AMCO INSURANCE COMPANY, Inc. an Iowa Corporation and DEPOSITORS INSURANCE COMPANY, Inc., an Iowa Corporation,


By: _____/s Daniel I. Babetch_____
       One of their Attorneys

Kurt Zitzer
Daniel I. Babetch
MEAGHER & GEER, P.L.L.P.
216 N. Jefferson Street, Suite 100
Chicago, Illinois 60661
(312) 463-1045
Attorney No. 6292410
Attorney No. 6215723
kzitzer@meagher.com
dbabetch@meagher.com.