E-FILED
Wednesday, 30 October, 2024 02:52:38 PM
Clerk, U.S. District Court, ILCD

EFILED
3/21/2024 4:38 PM
Joseph B. Roesch
7th Judicial Circuit
Sangamon County, IL

## IN THE CIRCUIT COURT OF ILLINOIS FOR THE SEVENTH JUDICIAL CIRCUIT
## SANGAMON COUNTY, ILLINOIS

| | |
|---|---|
| Matthew R. Herman, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Missouri Fiesta, Inc. and W&M Restaurants, Inc.,<br><br>Defendants. | Case No. 2024CH000020<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Matthew R. Herman ("Herman" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Missouri Fiesta, Inc. ("Missouri Fiesta") and W&M Restaurants, Inc. ("W&M", together with Missouri Fiesta, "Defendants") arising from their unlawful collection, use, and storage of Plaintiff's and the putative Class members' sensitive biometric data, to have Defendants return or destroy the biometric information that they have retained for over three years and for which the initial use is no longer pertinent, and to issue a written retention policy, among other things. Plaintiff further seeks statutory damages. Plaintiff, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, based upon counsel's due diligent investigation, publicly available documents, and conduct and statements of Defendants.

### NATURE OF THE ACTION

1. Defendants Missouri Fiesta and W&M Restaurants are franchisees of approximately 14 Taco Bell restaurants in Illinois, operating through Missouri Fiesta, W&M

1

**EXHIBIT A**

Restaurant or in one case, as PCN Restaurants, Inc. ("PCN").

2. At some point during their employment at Defendants' Taco Bell restaurants, employees' fingerprints are taken, and thereafter used by the Defendants to clock employees in and out, to keep their time records and to enable them to use the point of sale or POS system.

3. While there may be certain benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee.

4. Defendants' collection and storage of biometric identifiers and/or biometric information exposes employees to serious and irreversible privacy risks. For example, if an employee database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

5. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics.

6. Despite this law, Defendants disregard their employees' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in violation of the BIPA.

7. Specifically, Defendants have violated (and continue to violate) BIPA because they did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their biometric identifying fingerprints were being collected, stored, and used, as required by the BIPA;
- Provide a publicly available retention schedule and guidelines for permanently

2

       destroying Plaintiff's and the Class's fingerprints, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their fingerprints, as required by the BIPA.

8. Accordingly, this Complaint seeks an order: (i) declaring that Defendants' conduct violates the BIPA; (ii) requiring Defendants to cease the unlawful activities discussed herein; (iii) awarding liquidated damages to Plaintiff and the proposed Class; and (iv) awarding Plaintiff statutory damages for such violations.

## PARTIES

9. Plaintiff Herman is a natural person and citizen of the State of Illinois, who worked at a Missouri Fiesta owned Taco Bell restaurant in Jerseyville, Illinois.

10. Defendants Missouri Fiesta and W&M are related, large franchisees of Taco Bell restaurants. Together they own approximately 14 Taco Bell restaurants in Illinois, with at least one restaurant operating under the PCN name.

11. Missouri Fiesta is incorporated in Missouri and has a principal place of business in Union, Missouri, but maintains a registered agent for service of process in Illinois and is registered to do business in Illinois.

12. W&M Restaurants is a Missouri corporation, with a principal place of business in Union, Missouri.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conduct business transactions in Illinois, operate restaurants in Illinois, and have committed tortious acts in Illinois.

14. Venue is proper in this judicial circuit because Defendants conduct business

transactions and operate restaurants here.

## FACTUAL BACKGROUND

### I.  The Biometric Information Privacy Act.

15. In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

16. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, which can be linked to people's sensitive financial and personal data— could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

17. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

4

18. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15(b) (emphasis added).

19. BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

20. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry and fingerprints. *See* 740 ILCS 14/10.

21. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

22. The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

## II.  Defendants Violate the Biometric Information Privacy Act.

23. By the time BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

24. Unfortunately, Defendants specifically continue to collect, store, and use their employees' biometric data in violation of the BIPA.

25. Specifically, when employees work at one of Defendants' restaurants, they are required to have their fingerprints taken as a form of a biometric identifier.

26. Defendants use a point of sale or POS system that requires employees to use their fingerprints as a means of authentication and to enable them to use the cash register or the computer monitors at the counter, and to keep employee times to clock in and out and record breaks.

27. Defendants failed to inform their employees of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all, and failed to obtain their knowing consent to use their biometric data

28. Defendants similarly failed to provide its employees with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Defendant's databases -- or if they will ever be.

6

29. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Defendants —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Defendants disregard these obligations, and instead unlawfully collect, store, and use its employees' biometric identifiers and information without proper consent.

30. Ultimately, Defendants disregard their employees' statutorily protected privacy rights by violating the BIPA.

### FACTS SPECIFIC TO PLAINTIFF HERMAN

31. Plaintiff Herman worked as a team member and cashier for Defendants for various portions of 2020 through 2022 at the Taco Bell restaurant located at 1400 S. State Street, Jerseyville, Illinois.

32. In early 2021, Plaintiff was required to and did provide his fingerprints to Defendants for use by biometric systems located in the restaurant's POS and time keeping systems, which used his fingerprints to enable him to clock in and out, to record lunch breaks and to use the POS system.

33. Defendants never informed Plaintiff of the specific limited purposes or length of time for which they collected, stored, or used his biometric identifier. Similarly, Defendants never informed Plaintiff of any biometric data retention policy it developed, or whether they will ever permanently delete his biometric identifying information.

34. Plaintiff never signed a written release allowing Defendants to collect or store

his photograph.

35. Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of the BIPA alleged herein.

36. Plaintiff now seeks statutory damages under the BIPA as compensation for the injuries Defendants have caused as well as injunctive or other relief.

## CLASS ALLEGATIONS

### Class Definition

37. Plaintiff Herman brings this action pursuant to 735ILCS 5/2-801 on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All citizens of the State of Illinois who, within the applicable statute of limitations, had their biometric information collected, captured, received, otherwise obtained, or disclosed by Defendants, or any one of them, while they resided in Illinois.

38. The following people are excluded from the Class: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

39. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendants have collected, captured, received, or otherwise obtained biometric identifiers or biometric information from over 40 employees who fall into the definition of the Class. Ultimately, the Class members

will be easily identified through Defendants' records.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a) whether Defendants collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

   b) whether Defendants properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c) whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

   d) whether Defendants have sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

   e) whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

   f) whether Defendants comply with any such written policy (if one exists); and

   g) whether Defendants used Plaintiff's and the Class's fingerprints to identify them.

41. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in

complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

42.   **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## CAUSE OF ACTION
### COUNT I
### Violation of 740 ILCS 14/1, *et seq.*

#### (On Behalf of Plaintiff and the Class)

43.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.   BIPA requires companies to obtain informed written consent from employees

before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first:

(1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and*

(3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

45. BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and--importantly--deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

46. Defendants failed to comply with these BIPA mandates.

47. Defendants are "private entities" under the BIPA. *See* 740 ILCS 14/10.

48. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Defendants, as explained in detail in Section II. *See* 740 ILCS 14/10.

49. Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

50. Defendants violated 740 ILCS 14/15(b)(3) by failing to obtain written releases

from Plaintiff and the Class before they collected, used, and stored their biometric identifiers and biometric information.

51. Defendants violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifying information was being collected and stored.

52. Defendants violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored and used.

53. Defendants violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information.

54. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et. seq.*

55. On behalf of themselves and the Class, Plaintiff seeks:

(A) Injunctive and equitable relief as necessary to protect the interests of the Plaintiff and the Class by requiring Defendants to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein;

(B) statutory damages of $1,000 per violation for each of Defendants' negligent violations of the BIPA pursuant to 740ILCS 14/20(1); and

(C) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Herman, on behalf of himself and the Class, respectfully request that the Court enter an Order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Herman as representative of the Class, and appointing his counsel as Class Counsel;

B.  Declaring that Defendants' actions, as set out above, violate the BIPA;

C.  Awarding statutory damages of $1,000 to $5,000 for each of Defendants' violations of the BIPA;

D.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with BIPA;

E.  Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.  Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Date: March 21, 2024

*/s/ Katrina Carroll*
Katrina Carroll (#6291405)
**LYNCH CARPENTER LLP**
111 W. Washington Street - Suite 1240 Chicago, IL 60602
Phone: (312) 750-1265
Fax: (312) 212-5919
Email: katrina@lcllp.com

Lynda J. Grant
**THEGRANTLAWFIRM, PLLC**
521 Fifth Avenue, 17th Floor
New York, NY 10175
Phone: (212) 292-4441
Fax: (212) 292-4442
lgrant@grantfirm.com

Gary S. Graifman
Melissa R. Emert
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Phone: (845) 356-2570
Fax: (845) 356-4335
ggraifman@kgglaw.com
memert@kgglaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**